# IN THE UNITED STATES COURT OF FEDERAL CLAIMS

_____
                                          )
LOVE TERMINAL PARTNERS, L.P.              )
AND VIRGINIA AEROSPACE, LLC,              )
                                          )
            Plaintiffs,                   )
                                          )
        v.                                )        Case No. 08-536 L
                                          )        Honorable Margaret M. Sweeney
THE UNITED STATES OF AMERICA,             )        E-Filed September 18, 2012
                                          )
            Defendant.                    )
_____ )

## UNITED STATES' MOTION IN LIMINE TO EXCLUDE FROM TRIAL (1) CERTAIN OPINION TESTIMONY AND VALUATIONS PREPARED BY PLAINTIFFS' PROFFERED EXPERTS' DAVID ANDERSON AND MICHAEL MASSEY, AND (2) CERTAIN OPINION TESTIMONY OF PLAINTIFFS' PROFFERED EXPERT DEBORAH MEEHAN

# TABLE OF CONTENTS

**TABLE OF AUTHORITIES** ................................................................................................... iii

**LIST OF EXHIBITS** ........................................................................................................ v

**MEMORANDUM** ........................................................................................................... 1

I.   Introduction ................................................................................................... 1

II.   Standard of Review ....................................................................................... 3

III.  The Massey and Anderson Valuations Are Based Upon Unfounded and Unreliable Assumptions Concerning the Hypothesized Repeal of the Wright Amendment ........................... 5

IV.  Meehan's Opinion That A Buyer in October 2006 Would Have Valued Plaintiffs' Properties As Though The Wright Amendment Was Immediately and Fully Repealed at that Time Contradicts the Facts That She Considered, and Does Not Reflect Reliable Expert Analysis ..... 11

V.   In the Alternative, The Court Should Exclude the Massey and Anderson Valuations, and Meehan's Repeal Assumption On Relevance Grounds ................................................................. 15

**CONCLUSION** ........................................................................................................ 15

# TABLE OF AUTHORITIES

**FEDERAL CASES**

*Daubert v. Merrell Dow Pharms., Inc.*,
509 U.S. 579 (1993) .................................................................................................. *passim*

*East Tennessee Nat. Gas Co. v. 2.93 Acres in Wythe County*,
2007 WL 2688414 (W.D. Va. Sept. 13, 2007) ............................................................ 7

*Gen. Elec. Co. v. Joiner*,
522 U.S. 136 (1997) .............................................................................................. 2, 4, 15

*Ind. Mich. Power Co. v. United States*,
60 Fed. Cl. 639 (2004) ................................................................................................. 4

*Jarvis v. Sec'y of Dep't. of Health and Human Servs.*,
99 Fed. Cl. 47 (2011) ................................................................................................... 5

*Kumho Tire Co. v. Carmichael*,
526 U.S. 137 (1999) .................................................................................................. *passim*

*LifeWise Master Funding, LLC v. Telebank*,
2003 U.S. Dist. LEXIS 26340 (D. Utah Mar. 5, 2003) ................................................ 9

*Liquid Dynamics Corp. v. Vaughan Co.*,
449 F.3d 1209 (Fed. Cir. 2006) ................................................................................... 4

*Love Terminal Partners, L.P. v. United States*,
97 Fed. Cl. 355 (2011) ............................................................................................... 10

*McDowell v. Brown*,
392 F.3d 1283 (11th Cir. 2004) ................................................................................. 15

*Plainfield Specialty Holdings II Inc. v. Children's Legal Servs. PLLC*,
634 F. Supp. 2d 833 (E.D. Mich 2009) ....................................................................... 9

*Reeves v. Commonwealth Edison Co.*,
2008 WL 239030 (N.D. Ill. Jan. 28, 2008) ............................................................... 5, 7

*Seaboard Lumber Co. v. United States*,
308 F.3d 1283 (Fed. Cir. 2002) ................................................................................... 3

*TK-7 Corp. v. Estate of Barbouti*,
993 F.2d 722 (10th Cir.1993) ...................................................................................... 8

STATUTES

Pub. L. No. 109-352, 120 Stat. 2011 (2006) .................................................................................. 1

RULES

Fed. R. Evid. 702 .................................................................................................... *passim*

RCFC 16 .......................................................................................................... 1, 3

MISCELLANEOUS

Appraisal Institute, "The Appraisal of Real Estate" (13th ed.) ....................................................... 6

Uniform Standards of Professional Appraisal Practice, (2010-2011 Edition) ............................ 6, 7

## LIST OF EXHIBITS

| EXHIBIT | DESCRIPTION |
|---|---|
| 1 | Excerpts from the Summary Appraisal by Michael Massey, January 17, 2012 |
| 2 | Excerpts from the Expert Report of David E. Anderson, January 17, 2012 |
| 3 | Excerpts from the Deposition of Michael Massey, March 23, 2012 |
| 4 | Excerpts from the Deposition of David Anderson, March 30, 2012 |
| 5 | Excerpts from the Expert Report on Market Conditions and Demand for Use of the Dallas Love Field Airport by Deborah Meehan, January 17, 2012 |
| 6 | Excerpts from the Deposition of Alan Naul, December 7, 2011 |
| 7 | Excerpts from the Deposition of Deborah Meehan, March 29, 2012 |

<u>**MEMORANDUM**</u>

## I. Introduction

Pursuant to Rule 16(c)(2) of the Rules of the United States Court of Federal Claims ("RCFC"), Federal Rule of Evidence 702, and this Court's Scheduling Order dated April 25, 2012 (Dkt. 80), Defendant United States respectfully submits this motion in limine to exclude from presentation at trial certain valuation opinions and reports prepared by Plaintiffs' proffered experts David Anderson and Michael Massey, and certain opinion testimony to be offered by Plaintiffs' proffered expert Deborah Meehan.

Among other serious flaws, Massey's and Anderson's valuation reports and opinion testimony are predicated upon purported "highest and best uses" of Plaintiffs' properties that were not legally permissible at the time Plaintiffs' claims accrued. Specifically, Massey and Anderson assess the market value of Plaintiffs' property not in the statutory environment that actually prevailed immediately prior to the passage of the Wright Amendment Reform Act of 2006,[1] but in a hypothetical statutory environment that has never existed: one in which the Wright Amendment was fully and immediately repealed as of October 2006 and no restrictions applied to scheduled passenger flight services operating out of Love Field Airport. *See* Ex. 1, PX 90 (Massey Report); Ex. 2, PX 88 (Anderson Report); Ex. 3, Massey Dep. Tr. at 98; Ex. 4., Anderson Dep. Tr. at 78. This extraordinary and unfounded assumption is not even discussed in Mr. Massey's valuation, and is not supported by any factual analysis in either the Massey or Anderson valuation reports. Nor do Massey's or Anderson's valuations acknowledge that the value of Plaintiffs' properties as of October 2006 would be substantially lower had they considered the restrictions imposed by the Wright Amendment. These disqualifying methodological flaws do not conform to applicable professional standards, and render both

---

[1] Wright Amendment Reform Act of 2006, Pub. L. No. 109-352, 120 Stat. 2011 (2006).

valuations unreliable and inadmissible under Rule 702, and the Supreme Court's rulings in *Daubert*[2] and *Kumho*.[3]

The United States also moves in limine to exclude certain of the proffered expert opinions of Deborah Meehan, an aviation consultant whose testimony Plaintiffs plan to present to establish the market demand for Plaintiffs' properties as of October 2006. *See* Pls' Pretrial Mem (Dkt. 82) at 7. Specifically, Plaintiffs intend to have Ms. Meehan testify that the commercial aviation industry expected that the Wright Amendment would be immediately and fully repealed as of "mid-2006," and would have valued Plaintiffs' property on that basis. *Id.* at 7-8; Ex. 5, PX 89 (Meehan Report) at 1-2; Ex. 2, PX 88 (Anderson Report) § 2.2, p. 9. This opinion — which is intended to supply the sole evidentiary basis for the most critical assumption in both the Massey and Anderson valuations — lacks factual support, and is not the product of reliable expert analysis. Although Ms. Meehan has experience modeling aviation demand, and may possess the relevant expertise to project anticipated demand for flights at Dallas Love Field Airport under various hypothetical conditions, her opinion that the aviation market would value Plaintiffs' properties on October 13, 2006 as though the Wright Amendment would be immediately and fully repealed is not formed through any modeling or technical study. Rather, her opinion on that subject is speculative lay testimony, supported by little more than published news reports concerning repeal efforts, and the observation that the Wright Amendment's restrictions had been challenged and modified over time. *See* Ex. 5, PX 89 (Meehan Report) §§ 3.2-3.4, pp. 10-14. The Federal Rules of Evidence do not permit admission of such a bare and speculative opinion, and it should be excluded. *Joiner*, 522 U.S. at 146 ("[N]othing in either

---

[2] *Daubert v. Merrell Dow Pharmaceuticals, Inc.,* 509 U.S. 579, 590 (1993).
[3] *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 147 (1999).

*Daubert* or the Federal Rules of Evidence requires a district court to admit opinion evidence that is connected to existing data only by the *ipse dixit* of the expert.").

In the addition, this Court should exclude Massey's and Anderson's valuation reports and opinion testimony, and Ms. Meehan's Wright Amendment repeal opinion on the basis of relevance. *See Daubert,* 509 U.S. at 597. Because any award of just compensation for the taking alleged here must be measured by reference to the market value of Plaintiffs' property on October 13, 2006, all assumptions concerning hypothetical changes in law after that time are irrelevant, and as matter of law cannot form a basis for the Court's judgment.

## II. Standard of Review

This Court has authority to issue advance rulings on the admissibility of evidence and limit the use of testimony under Federal Rule of Evidence 702. RCFC 16(c)(2)(D). A party proffering expert testimony has the burden of establishing its admissibility by a preponderance of proof. *Daubert*, 509 U.S. at 592 n.10. Rule 702 of the Federal Rules of Evidence governs the admissibility of expert testimony:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if: (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702. These standards apply to bench trials as well as jury trials, *Seaboard Lumber Co. v. United States*, 308 F.3d 1283, 1302 (Fed. Cir. 2002), and to all expert testimony. *Kumho*, 526 U.S. at 147.

Rule 702 demands that a trial judge act as "gatekeeper" to ensure that proffered expert testimony "both rests on a reliable foundation and is relevant to the task at hand." *Daubert*, 509 U.S. at 597. The admissibility of expert testimony under Rule 702 turns on "the relevance and helpfulness of an expert's testimony, its reliability, and whether the basis of her opinion is one reasonably relied upon by experts in her field." *Ind. Mich. Power Co. v. United States*, 60 Fed. Cl. 639, 646-47 (2004) (quoting *Daubert*, 509 U.S. at 589). Reliability under Rule 702 requires testimony to be grounded in reliable methods and procedures rather than "subjective belief or unsupported speculation." *Daubert*, 509 U.S. at 590; *Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 146 (1997). The Court may not admit "opinion evidence that is connected to existing data only by the *ipse dixit* of the expert," *Kumho*, 526 U.S. at 157, and must reflect the same level of intellectual rigor that characterizes the practice of an expert in the relevant field. *Id.* at 152.

To assist the assessment of reliability, the Supreme Court in *Daubert* identified four nonexclusive factors that a trial court may consider: (1) whether the opinion at issue is susceptible to testing and has been subjected to such testing; (2) whether the opinion has been subjected to peer review; (3) whether there is a known or potential rate of error associated with the methodology used and whether there are standards controlling the technique's operation; and (4) whether the theory has been accepted in the scientific community. *See* 509 U.S. at 593-94; *Liquid Dynamics Corp. v. Vaughan Co.,* 449 F.3d 1209, 1221 (Fed. Cir. 2006). Although these factors are nonexclusive, the Court must apply some set of reasonable reliability criteria. *Kumho*, 526 U.S at 158; *see also id.* at 158-59 (Scalia, J., concurring) ("trial-court discretion in choosing the manner of testing expert reliability [] is not discretion to abandon the gatekeeping function . . . . Rather, it is discretion to choose among *reasonable* means of excluding expertise that is *fausse* and science that is junky." (emphasis in original)).

4

**III.    The Massey and Anderson Valuations Are Based Upon Unfounded and Unreliable Assumptions Concerning the Hypothesized Repeal of the Wright Amendment**

To meet Rule 702(c)'s "reliability" standard, an expert must demonstrate in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field. *Kumho,* 526 U.S. at 152.  Among other things, that requirement demands that an expert follow the same professional standards applicable to his or her professional work outside the context of litigation.  *Id*. at 157; *Reeves v. Commonwealth Edison Co.*, 2008 WL 239030 at *8-*9 (N.D. Ill. Jan. 28, 2008) (excluding appraisal because, among other things, it failed to conform to Uniform Standards of Professional Appraisal Practice).  And expert testimony requires "more than subjective belief or unsupported speculation" on the expert's part.  *Jarvis v. Sec'y of Dep't. of Health and Human Servs.,* 99 Fed. Cl. 47, 60 (2011) (citing *Daubert,* 509 U.S. at 590). But Messrs. Massey and Anderson's valuation reports do not adhere to fundamental real estate appraisal standards, and incorporate without analysis or factual support, an unfounded hypothetical premise that causes them to assign tens of millions in value to vacant property that generated no profit for the five-year period immediately preceding their valuations.  This is exactly the type of unreliable made-for-litigation expert work which this Court must exclude under the *Daubert* and *Kumho Tire* standards.

Mr. Massey's appraisal purports to analyze the impact of the Wright Amendment Reform Act upon Plaintiffs' property interest in the LTP/VA Terminal.  "Considering all of the facts," Mr. Massey opines that that the value of the "Legend Airline Terminal and Parking Garage (before the take) as of October, 2006" is $20,500,000.  Ex. 3, PX 90 (Massey Report) at 72.  As part of this analysis, Mr. Massey relied upon "income and expense estimates" "furnished by" Plaintiffs' second valuation expert David Anderson.  *Id.*  Though it is not discussed in his expert

report, Mr. Massey testified at his deposition that he did not personally "analyze the highest and best use of the subject property" in the "before" condition, but instead relied upon "the Meehan report and David Anderson's report." Ex 3, Massey Dep. Tr. at 95. Specifically, Mr. Massey adopted Ms. Meehan and Mr. Anderson's assumption that "scheduled passenger service before [the taking] was very viable." *Id.* at Tr. 98. He also clarified that his valuation of the Love Terminal Partners/Virginia Aerospace ("LTP/VA") Terminal in the "before" condition assumed that the constraints of the Wright Amendment "go away." *Id.* Accordingly, Mr. Massey admits that the fundamental basis for his assessment that the LTP/VA Terminal had $20,500,000 in value as of the date of the taking is a set of assumptions which he adopted uncritically from Plaintiffs' other litigation experts.[4] Mr. Massey's valuation does not meet professional standards.

In the cover letter accompanying his valuation report, Mr. Massey states that "this appraisal is in conformance with the current appraisal requirements of the Appraisal Institute" and the "Uniform Standards of Professional Appraisal Practice (USPAP)." Ex. 1, PX 90 (Massey Report) at 2. But the Appraisal Institute instructs that any assessment of the "highest and best use" of a property must include specific analysis establishing that the proposed use is "legally permissible." *See* Appraisal Institute, "The Appraisal of Real Estate" (13th ed.) at 279. If a proposed "highest and best use" depends upon a change in the law — even one as mundane as an ordinary zoning change — the appraisal must be issued "subject to an extraordinary assumption," and "must be addressed as such." *Id.* at 282. In turn, USPAP requires that an

---

[4] At a different point in his deposition, Mr. Massey stated that it was his "personal opinion," that the highest and best use of the LTP/VA Terminal in 2006 was as a "functioning airline terminal," Ex 3, Massey Dep. at Tr. 136, but his assumptions concerning the market value of the terminal came directly from Anderson and Meehan.

appraiser's summary report "clearly and conspicuously" "state all extraordinary assumptions and hypothetical conditions" and "state that their use might have affected the assignment results." USPAP Standards (2010-2011 Edition) Rule 2-2(b)(x).

Mr. Massey's appraisal does not meet these standards. His appraisal report fails to state that it incorporates an extraordinary assumption or hypothetical condition —*i.e.*, an assumed change in law to immediately and fully repeal the Wright Amendment as of October 2006, or an assumption that "market participants will pay a premium" in anticipation of such a change — and certainly does not provide a documented basis for these assumptions. Furthermore, Mr. Massey does not disclose that his assumption concerning the Wright Amendment's repeal significantly affects value. These shortcomings characterize an appraisal that was performed for litigation and does not adhere to the standard the Supreme Court has established for reliable expert testimony under Federal Rule of Evidence 702. Indeed, at least one court has specifically held that an appraiser's report based upon an extraordinary assumption lacking an adequate factual basis is unreliable and unhelpful to the trier of fact. *See Reeves*, 2008 WL at *8-*9. *Accord East Tennessee Nat. Gas Co. v. 2.93 Acres in Wythe County*, 2007 WL 2688414 at *4 (W.D. Va. Sept. 13, 2007) (excluding pursuant to Rule 702 a real estate appraisal whose valuation depended upon hypothetical and speculative future conditions).

Likewise, Mr. Anderson's valuation of the Plaintiffs' property interest in the LTP/VA Leases, is not based on the actual statutory environment in effect at Love Field before October 13, 2006. Instead, it is unreasonably premised on the extraordinary and unsupported assumption that although the Wright Amendment's geographic restrictions were in effect until WARA repealed them, "prospective acquirers of the LTP/VA Leases expected that the Wright Amendment restrictions on aircraft size and origin/destinations would be largely or entirely

7

removed and, therefore, their assessments of the value of the LTP/VA Leases would (largely or entirely) exclude such restrictions."  Ex. 1, PX 90 (Massey Report) § 2.2, p. 9.  In contrast to Mr. Massey, Mr. Anderson does clearly state this extraordinary assumption (without acknowledging that it is an extraordinary assumption) in his report.  But he fails to provide any level of supporting factual analysis explaining why he believes this assumption is reasonable, and provides no disclosure concerning how — and by how much — this assumption affects his $133.5 million valuation of Plaintiffs' leasehold interests.  Instead, he states that he relies upon "[t]he Meehan Report" which "finds that, by mid-2006, knowledgeable participants in the commercial aviation industry" "expected a repeal of the Wright Amendment."  Accepting uncritically — as its core premise — the bare opinion of Plaintiffs' aviation consultant expert Deborah Meehan, Mr. Anderson's valuation is not characterized by the same level of intellectual rigor that attends the practice of an expert in his field.  *Kumho,* 526 U.S. at 152.  *See also TK–7 Corp. v. Estate of Barbouti,* 993 F.2d 722, 732 (10th Cir. 1993) (expert who adopted the projections of another expert did not reasonably rely on those projections when the record did not reveal what efforts the expert independently made to corroborate the projections).  Furthermore, it is noteworthy that Mr. Anderson is not a licensed real estate appraiser in any state, and, while his report cites to the Uniform Appraisal Standards for Federal Land Acquisitions, Ex. 2, PX 88 (Anderson Report) at 2, he did not attempt to comply with either those standards, or the Uniform Standards for Professional Appraisal Practice.  Ex. 4, Anderson Dep. Tr. at 74:4-75:21.

Massey and Anderson's valuations are particularly unreliable not only because they are unsupported by independent factual analysis, but because the factual record simply contradicts the "extraordinary" change-in-law assumption upon which they rely.  As Plaintiffs themselves

acknowledge, for the five-and-one-half years following Legend Airline's failure, and preceding

the Wright Amendment Reform Act, Plaintiffs were unable to attract a single airline or airline

terminal operator to lease gates at the LTP/VA terminal, or to purchase Plaintiffs' rights in the

terminal outright. No airline even made them an offer. *See* Ex 6, Naul Dep. Tr. at 154-161, 163-

165. Plaintiffs' discussions in 2005 with Pinnacle never progressed beyond a draft term sheet

that Plaintiffs' floated and Pinnacle rejected. *See id.* at Tr. 161:8-162:4. And Plaintiffs' cursory

discussions with JetBlue in 2006 did not even include an exchange of written proposals. *Id*. at

164-65. Thus, there is no evidence for the idea that, in supposed anticipation of the Wright

Amendment's full and immediate 2006 repeal, airlines or airline terminal management

companies were clamoring to lease, purchase or otherwise invest in Plaintiffs Love Field

property interests. Indeed, as Plaintiffs testified at deposition, they believed that airlines were

worried about uncertainty concerning the Wright Amendment's potential repeal. *See* Ex. 6, Naul

Depo at Tr. 150-51. In the face of these facts, Plaintiffs' change-in-law assumption, as applied to

Mr. Anderson's valuation is especially far-fetched and speculative because it asks the Court to

accept not only that a buyer would have felt certain enough about the Wright Amendment's

repeal prospects in 2006 to purchase Plaintiffs' existing developed terminal, but to pay some

$133.5 million for the right to develop a brand new 16 gate airline terminal where one does not

exist and has never existed. *See Plainfield Specialty Holdings II Inc. v. Children's Legal Servs.

PLLC*, 634 F. Supp. 2d 833, 847 (E.D. Mich 2009) (rejecting on 702 grounds an appraisal of a

plaintiff's business premised upon projections have no relation to revenues actually earned by

the plaintiff in the past); *LifeWise Master Funding, LLC v. Telebank,* 2003 U.S. Dist. LEXIS

26340, *67 (D. Utah Mar. 5, 2003) (observing that projections of future revenues disconnected

from past performance and presuming "unprecedented future accomplishments" are inadmissible

under *Daubert v. Merrell Dow Pharm., Inc.,* 509 U.S. 579, 597 (1993)).

Moreover, neither Massey nor Anderson analyzed and weighed the substantial risks underlying the assumed change-in-law itself. As federal legislation whose repeal would require majority votes in both bodies of Congress and approval by the President, the Wright Amendment in 2006 was nothing like a municipal zoning ordinance from which an appraiser (or a prospective buyer) might reasonably expect they could easily achieve a variance. Dallas Love Field Airport has been the subject of intense political fighting and regulatory uncertainty for decades. *See generally Love Terminal Partners v. United States*, *L.P.,* 97 Fed. Cl. 355, 362-68 (2011). In March 2006, when Congress recommended that Dallas and Fort Worth jointly propose a solution to end the "decades of litigation and contentious debate" concerning the "use of Love Field, and proposed legislative changes to the Wright Amendment," *id.* at 366 (citing H.R. Rep. No. 109-600, pt. 1 at 3), there was no basis to predict that repeal – let alone full and immediate repeal — was imminent. Rather, Southwest Airlines had been lobbying Congress for complete repeal, and American Airlines was lobbying for no repeal at all. *Id.* at 366. And as experience showed, the repeal legislation that Congress eventually passed did not effect a full and immediate repeal of the Wright Amendment with no other conditions on flight services at Love Field. That real world outcome —known to Massey and Anderson at the time they performed their valuations — further defeats the unwarranted and speculative change in law upon which Plaintiffs' purported experts based their valuations.

In short, Messrs. Massey and Anderson offer valuations of Plaintiffs' property as of October 13, 2006 that assume away legal restrictions that actually applied as of that date, and substitute, as the basis for their valuation, a new and different statutory environment under which they predict Plaintiffs' theretofore unprofitable investments will become enormously profitable.

10

They do so without any independent analysis or study, and despite historical facts that establish that very little demand existed for Plaintiffs' property as of October 13, 2006. These valuations are unreliable and inadmissible under the Supreme Court's opinions in *Daubert* and *Kumho,* and cannot assist the Court in determining the market value of Plaintiffs' property as of October 13, 2006.

**IV.**     **Meehan's Opinion That A Buyer in October 2006 Would Have Valued Plaintiffs' Properties As Though The Wright Amendment Was Immediately and Fully Repealed at that Time Contradicts the Facts That She Considered, and Does Not Reflect Reliable Expert Analysis**

The Court should also exclude the proposed testimony of Deborah Meehan which supplies the purported expert analysis underlying Massey's and Anderson's valuation assumptions. Plaintiffs intend for Ms. Meehan to opine on "the anticipation by the airline and private airport management communities regarding the repeal of the Wright Amendment and their likely response to this repeal." Ex. 5, PX 89 (Meehan Report) §1.2, p. 4. Specifically, Plaintiffs' plan to offer Ms. Meehan's opinion that "given the imminent repeal of the Wright Amendment in October 2006" "the ability to accommodate the expected doubling in passenger traffic was the highest and best use for the subject property." *Id.* § 1.0, p. 1. Though Ms. Meehan recognized that the Wright Amendment remained in place as of October 13, 2006, and "constrained the subject properties to a niche group of short haul operators," *id.* § 2.2, p. 7-8, she developed models forecasting demand for Plaintiffs' property in a scenario in which "there would be substantial, if not total repeal of the Wright Amendment." *Id.* § 6.1, p. 36. As discussed further below, Ms. Meehan's opinion — that "a reasonable buyer" would have approached Plaintiffs' properties in October 13, 2006 as though the Wright Amendment was certain to be totally repealed, *id.* — is a speculative lay opinion: it depends largely on newspaper

reports and does not follow from the application of any technical or specialized knowledge. Moreover, as discussed with respect to the Massey and Anderson reports, Ms. Meehan's opinion simply contradicts the facts, including facts she considers and discusses in her report.

In support of her view that "substantial if not total repeal of the Wright Amendment" was "inevitable" as of October 13, 2006, Ms. Meehan chronicles some of the events leading up to the passage of the Wright Amendment Reform Act. Relying primarily upon newspaper accounts archived at Southwest Airlines' website, she points out that that in 2004 Southwest began "an aggressive campaign to repeal the Wright Amendment in 2004," Ex. 5, PX 89 (Meehan Report) § 3.2, p. 10, and that "local citizen groups, and individuals also lobbied" for its repeal. *Id.* She also observes that in response to Southwest's lobbying efforts, American Airlines and Dallas-Fort Worth ("DFW") Airport hired consultants to examine the impact that the Wright Amendment's repeal would have on their operations. *Id.* § 3.3, p. 12. She also cites a report commissioned by the City of Dallas to evaluate "future air service scenarios at Dallas Love Field that could realistically result if the Wright Amendment is repealed . . . ." *Id.* § 3.4, p. 14. She also acknowledges, however, that American Airlines and DFW were waging an "aggressive battle" to fight repeal. *Id.* § 3.3, p. 13. Ms. Meehan also notes that during 2005 and 2006 "two carriers [Jet Blue and Pinnacle] approached LTP/VA for some or all of the Lemmon Avenue gates," and that these negotiations "evidence[] demand for the LTP/VA property and is a market-based indication of the approximate value to an airline of the LTP/VA property." *Id.* Ms. Meehan also cites a statement by members of Congress encouraging local parties to reach a resolution as to the future restrictions to be imposed on Love Field Airport. *Id.* § 3.4, p. 13.

On this basis, without further study or analysis, Ms. Meehan intends to opine that "the general state of knowledge throughout the industry was that there would be substantial, if not

total repeal of the Wright Amendment." *Id.* § 6.1, p. 36. But this opinion does not flow from the factual information Ms. Meehan cites, and is certainly not the "product of reliable principles and methods" that "will help the trier of fact." Rather, Ms. Meehan's conclusion is simply a lay opinion, and one that is contradicted by the facts. As discussed with respect to the Massey and Anderson reports, and as Ms. Meehan acknowledges, even if the industry could expect some form of Wright Amendment repeal, with both Southwest and American Airlines lobbying aggressively on separate sides of the issue, it is hard to understand how market participants could predict that total or "substantially" total repeal of the Wright Amendment was imminent. And Ms. Meehan does not explain how she reached that conclusion. Moreover, as discussed above, the actual repeal legislation passed by Congress repealed the Wright Amendment's geographic flight restrictions only in 2014 — eight years *after* October 13, 2006. Ms. Meehan does not acknowledge or take this actual legislative outcome into account.

Furthermore, the only evidence of market participants actually investigating Plaintiffs' properties — the 2005 and 2006 discussions with JetBlue and Pinnacle airlines — does not substantiate Ms. Meehan's portrayal of an eager market. The JetBlue negotiations were preliminary talks that did not yield an offer from JetBlue. And the Pinnacle discussions, which Ms. Meehan characterizes as "negotiations" "for the sale of the existing Lemmon Ave Terminal and LTP/VA lease rights at a purchase price of $85 million for the existing Lemmon Ave Terminal, and parking garage facility, and $100 million for the entire LTP/VA leasehold," *id.* § 3.3, p. 13, were in reality one-sided — with Plaintiffs proposing the $85 million and $100 million prices, and Pinnacle ending negotiations without even making a counter-offer. *See* Ex. 6, Naul Dep. Tr. at Tr. 161:8-162:4. Ms. Meehan did not talk to management at JetBlue or Pinnacle to determine their actual interest in Plaintiffs' properties, and while she did talk to other

13

industry professionals — including some of the private airport management groups she believes may have been interested in Love Field Airport opportunities absent the Wright Amendment — she interviewed them solely to gauge their interest in Love Field in a full Wright Amendment repeal scenario.  *See e.g.* Ex. 7, Meehan Dep. Tr. at 53:10-54:7:

> Q:     Okay. And who did you talk to at Vancouver [Airports]
>        about the subject property?
>
> A:     George Casey.
>
> Q:     Who is George Casey?
>
> A:     He's the president and CEO.
>
> Q:     And when did you talk to George Casey?
>
> A:     The fall.
>
> Q:     Of 2011?
>
> A:     Yes. Sorry.
>
> Q:     Okay. And what did you discuss with George Casey?
>
> A:     I asked him what his level of interest would
>        be in gates at Love Field.
>
> Q      And what time period were you talking about?
>
> A      2006.
>
> Q      Okay. And what did he say?
>
> A      He would have a high level of interest.
>
> Q      And would he have a high level if and only
>        if the Wright Amendment were repealed?
>
> A      I posed that as part of the question.

Given the sources of information upon which her opinions are based (primarily public knowledge), the contradicting factual information in the record, and the lack of analytical connection between the information she reviewed and her opinion, the Court should not permit Ms. Meehan to offer an opinion that market participants would value Plaintiffs' property as of

October 13, 2006 as though the Wright Amendment restraints had been lifted.  That opinion is based on little more than Ms. Meehan's "say-so," and does not constitute reliable expert opinion. *Joiner*, 522 U.S. at 146; *McDowell v. Brown*, 392 F.3d 1283, 1300 (11th Cir. 2004) ("[A]n expert opinion is inadmissible when the only connection between the conclusion and the existing data is the expert's own assertions . . . .").

## V.     In the Alternative, The Court Should Exclude the Massey and Anderson Valuations, and Meehan's Repeal Assumption On Relevance Grounds

To be admissible, expert testimony must be not only reliable, but also relevant.  *Daubert,* 509 U.S. at 597.  For reasons discussed more fully in the United States' parallel Motion In Limine to exclude certain irrelevant testimony (filed contemporaneously with this motion), the Court should also exclude as irrelevant Messrs. Massey and Anderson's valuation opinions and reports, and Ms. Meehan's opinion concerning Wright Amendment-free market for Plaintiffs' properties at the time of the taking.

## CONCLUSION

For the foregoing reasons, the United States respectfully requests that the Court grant this motion *in limine* and exclude the appraisals and opinions of Plaintiffs' proffered experts Michael Massey and David Anderson, which are based upon unfounded and extraordinary assumption that a buyer would value Plaintiffs' property on October 13, 2006 as though the Wright Amendment had been fully and immediately repealed.  Likewise the Court should exclude the speculative opinion testimony of Plaintiffs' proffered expert Deborah Meehan which provides the basis for Massey and Anderson's assumption.

Respectfully submitted this 18th day of September 2012,

IGNACIA S. MORENO
Assistant Attorney General
 /s/ Joshua A. Doan
JOSHUA A. DOAN
EMILY M. MEEKER
JOSHUA P. WILSON
Trial Attorneys
United States Department of Justice
Environment and Natural Resources Division
Natural Resources Section
P.O. Box 7611
Washington, DC 20044-7611
Email: Joshua.Doan@usdoj.gov
Telephone: 202-305-0874
Facsimile: 202-305-0506

*Of Counsel:*
Joy Park
Trial Attorney
U.S. Department of Transportation
1200 New Jersey Ave., S.E.
Washington, DC 20590
(202) 366-9286 (office)
(202) 493-0154 (fax)